Norman BRONIMAN, Plaintiff-Appellant,

v.

The GREAT ATLANTIC & PACIFIC TEA COMPANY, a foreign corporation, Defendant-Appellee.

No. 16081.

United States Court of Appeals
Sixth Circuit.

Dec. 10, 1965.

Dee Edwards, Detroit, Mich., for appellant.

John L. Vanker, Jr., Detroit, Mich., for appellee.

Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., on the brief, Joseph Pawl, Detroit, Mich., of counsel.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This cause is on appeal from an order of the United States District Court for the Eastern District of Michigan, Southern Division, granting summary judgment to The Great Atlantic & Pacific Tea Company, defendant-appellee. The case was submitted to the court on the amended complaint of Norman Broniman, plaintiff-appellant, and the affidavit of John H. Main, operating superintendent of defendant-appellee, with attached copy of the collective bargaining agreement between the defendant-appellee and union representing the appellee's employees.

The plaintiff-appellant was an employee of the defendant-appellee and admittedly one of the employees covered by the collective bargaining agreement above mentioned. The parties will be referred to as plaintiff and defendant, respectively. Jurisdiction is based on diversity of citizenship (Section 1332(a), Title 28, U.S.C.) and Sections 159(a) and 185, Title 29, U.S.C. (Sections 9(a) and 301 L.M.R.A.)

█ We are bound to accept as true the allegations of the amended complaint, the pertinent facts of which are as follows: The plaintiff was employed as a selector in the warehouse of the defendant from sometime in May, 1953, until on or about April 14, 1961. Under and by virtue of the collective bargaining agreement between the defendant and the union, the plaintiff acquired certain rights for continuity of employment and the right not to be laid off out of seniority or to be discharged without just cause. He was entitled to have written notice of discharge and to have such written notice preceded by two written warning notices. Plaintiff further acquired the right to have any grievances arising out of his employment or any grievances arising out of the circumstances of a discharge processed through the grievance procedure provided in the agreement.

On April 14, 1961, plaintiff was laid off because of an alleged falling off of business. The defendant continued in its employ, subsequent to plaintiff's layoff, other employees with less seniority than that of the plaintiff, in violation of the plaintiff's rights under the agreement.

The plaintiff filed a written grievance with Harry Whipple, a union steward, on May 11, 1961. Plaintiff alleges upon belief that the union steward took no action on his grievance in violation of the steward's union duty. On August 7, 1961, plaintiff was informed that he had been discharged as of May 22, 1961. Plaintiff was not given two warning notices in writing and was not given a written notice of discharge by the defendant.

At the time of the layoff plaintiff made numerous attempts to present his grievance to the defendant but the defendant refused to discuss the grievance with the plaintiff or with his collective bargaining representative. On August 15, 1961, plaintiff had his attorney send a written notice of his grievance to the defendant. The defendant failed, refused and neglected to reply to this notice of grievance.

It is alleged upon the above stated facts that the defendant's refusal to permit plaintiff to present his grievance and have it adjusted is a breach of plaintiff's rights under the provisions of Section 159(a), Title 29, U.S.C. Plaintiff further alleges a breach of the contract of employment as modified by the collective bargaining agreement and claims money damages in a substantial amount for loss of earnings and pension and welfare rights.

For relief the plaintiff seeks an order of the court requiring the defendant to

meet with the plaintiff for the purpose of processing his grievance arising out of his wrongful discharge, as provided by Section 159(a), Title 29, U.S.C. And further, the plaintiff seeks damages in the amount of $25,000, plus loss of wages to the date of trial.

■ Whatever rights the plaintiff possessed as to seniority and as to any limitation upon the defendant's right to discharge him must find their source in the collective bargaining agreement between the defendant and the union representing the defendant's employees. Union News Co. v. Hildreth, 295 F.2d 658, 663, C.A.6; Elder v. New York Cent. R. Co., 152 F.2d 361, C.A.6; United States Steel Corporation v. Nichols, 229 F.2d 396, 399, 56 A.L.R.2d 980, C.A.6, cert. den. 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474. The collective bargaining agreement in question provides for a grievance procedure.[1]

■ Substantive federal law is controlling in actions on collective bargaining agreements. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Smith v. Evening News Associa-

tion, 371 U.S. 195, 199, 83 S.Ct. 267, 9 L.Ed.2d 246; General Electric Co. v. Local 205, etc., 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028.

■ The right of an individual employee to bring an action, by virtue of Section 301 L.M.R.A., against his employer for violation of rights arising out of a collective bargaining agreement cannot now be questioned. Smith v. Evening News Association, supra; Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; Carey v. Westinghouse Electric Corp., 375 U.S. 261, 268, 84 S.Ct. 401, 11 L.Ed.2d 320. However, the right to bring such an action is not an unlimited one.

■ The question now before us is whether the plaintiff under the collective bargaining agreement, to which he was a beneficiary, and under the facts of this case as alleged in the amended complaint, was in a position to bring a direct action against his employer. We conclude that he was not.

■ The action is brought as a violation of the plaintiff's rights under Section 159(a), of Title 29, U.S.C.[2] The plaintiff seeks an order requiring the defendant to meet with the plaintiff for the purpose of processing his grievance. The nature of the action herein and the

**1.** "ARTICLE III—GRIEVANCE PROCEDURE

Section 1. Any complaint of violation or infraction of any section of this Agreement shall first be submitted for settlement or arbitration to the Steward of the Union or the Employer on the premises, who shall endeavor to settle the same satisfactorily to both parties. Should he, however, be unable to settle the same, then such complaint shall be submitted to the Business Agent of the Local Union #337, who shall endeavor to settle the same satisfactorily to both parties. Should he, however, be unable to settle the same satisfactorily, then such complaint shall be settled by a Board of Arbitration composed of the following: Two (2) to be selected by the Employer, the Steward of the Union, and the Business Representative of the Local Union. In case of a disagreement, a fifth member shall be chosen by the Arbitration Board,

whose majority decision shall be binding upon both parties."

**2.** "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further*, That the bargaining representative has been given opportunity to be present at such adjustment."

relief sought are based on a misconception of the statute in question. The employer is not required to meet for the purpose of adjusting a grievance. The statute provides a permissible step in adjustment, not a required one. In other words, this section of the statute grants a privilege to the employee. He may or may not take his grievance directly to the employer, as he chooses. If he takes his grievance directly to the employer, the employer may not wish to attempt to make an adjustment in the absence of the union representative and he cannot be compelled to do so. There could be good reason for this.

The cases cited by counsel for plaintiff are not in point. In Hughes Tool Co. v. National Labor Relations Board, 147 F. 2d 69, 73, 158 A.L.R. 1165, C.A.5, the court held that the union or its representative did not have the *exclusive* right to handle the employee's grievance. Section 159(a) preserved the *right* to the employee to approach the employer individually. United Protective Workers of America v. Ford Motor Co., 194 F.2d 997, C.A.7, was an action by the union and the employee. The employer refused to follow the grievance procedure at the request of the union. National Labor Relations Board v. North American Aviation, Inc., 136 F.2d 898, C.A.9, involves a charge by the union that the employer committed an unfair labor practice by offering the employees a method of settling labor disputes through the company, that ended in arbitration and paralleled the method provided in the collective bargaining agreement. The court held that the employer had a right to do this under the proviso of Section 159(a) which gives the right to employees to present their grievances to their employer. It was not mandatory that the employees follow the employer's plan. They could choose to follow the procedure set up in the collective bargaining agreement. Elgin, Joliet & Eastern Railway Co. v. Burley et al., 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, rehearing granted 326 U.S. 801, 66 S.Ct. 86, 90 L.Ed. 488, opinion on rehearing 327 U.S. 661, 66

S.Ct. 721, 90 L.Ed. 928, involves the Railway Labor Act. The court held that a collective bargaining representative is without statutory authority under the Railway Labor Act to compromise and settle a monetary claim of an individual employee. A settlement so effected in the absence of legally sufficient authorization will not bar a suit by the individual employee to enforce his claim.

We agree with the construction placed upon Section 159(a) by the Second Circuit in Black-Clawson Co., Paper Mach. Division v. International Ass'n of Mach., 313 F.2d 179. The court said at p. 185:

> "It seems clear, therefore, that rather than conferring an indefeasible right upon the individual employee to compel compliance with the grievance procedure up to and including any arbitration provision, section 9(a) merely set up a buffer between the employee and his union, 'permitting' the employee to take his grievances to the employer, and 'authorizing' the employer to hear and adjust them without running afoul of the 'exclusive bargaining representative' language of the operative portion of section 9(a)."

It is clear to us that the plaintiff is not entitled to the order prayed for in his petition as a result of the violation of his rights under Section 159(a).

There is another potent reason that bars the plaintiff's action against the defendant. It is alleged in the amended complaint that the plaintiff filed a written grievance with a union steward and that he made numerous attempts to present his grievance to the defendant, including a written notice to defendant by his attorney. This was only the first step of the grievance procedure provided in the collective bargaining agreement. According to the agreement, if neither the employer nor the steward is able to settle the grievance, the complaint shall then be submitted to the Business Agent of the Local Union. The alleged failure of the union steward or defendant to take any action on plaintiff's complaint must

be considered as an inability to adjust or settle the grievance.

It is not alleged in the amended complaint that the plaintiff took this second step. This was a simple and easy step which the plaintiff could have taken himself without any assistance. The plaintiff having failed to follow the simple procedure of the agreement by submitting his complaint to the Business Agent of the Local Union, he is not in a position to bring an action against the defendant.

 Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, decided after the briefs were filed on this appeal, is dispositive of the issue now before us upon the use of the grievance procedure in the collective bargaining agreement. At p. 652, 85 S.Ct. at p. 616 the Court said:

> "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress."

It is clear in the case before us that there was no real attempt to use the contract grievance procedure agreed upon by the employer and the union. At p. 653, 85 S.Ct. at p. 616 the Court said:

> "And it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.
>
> "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a law suit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it

loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' Local 174, Teamsters, [Chauffeurs, Warehousemen and Helpers of America] v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593."

We conclude that under the facts of this case the district judge was correct in granting a summary judgment to the defendant.

Judgment affirmed.